UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED:  8/4/2023
```

TRICIA LEPINO,

                  Plaintiff,

-against-

ANTHEM BLUE CROSS LIFE AND HEALTH
INSURANCE COMPANY,

                  Defendants.

No. 22-cv-4400 (NSR)

**OPINION & ORDER**

NELSON S. ROMÁN, United States District Judge:

    Plaintiff Tricia LePino ("Plaintiff") brought this action against Defendant Anthem Blue Cross Life and Health Insurance Company ("Defendant") asserting claims for breach of contract, seeking to recover benefits allegedly owed to her under the terms of the life insurance policy of her deceased spouse, John Capotorto, III (the "Insured"). (*See* ECF No. 1, Exh. 1 ("Complaint" or "Compl.")). The action was initially filed in the New York Supreme Court, Westchester County, but was removed to federal court on May 27, 2022. (ECF No. 1.). Before the Court is Defendant's 12(b)(6) motion to dismiss. (*See* ECF No. 13.) For the following reasons, Defendant's motion to dismiss is GRANTED.

BACKGROUND

**I. Factual Background**

    In ruling on Defendant's motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), the Court accepts the following facts, which are alleged in Plaintiff's Complaint as true. *See Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152 (2d Cir. 2002) (citing *Gregory v. Daly*, 243 F.3d 687, 691 (2d Cir. 2001)).

As is relevant to this motion, Defendant administered a life insurance policy (the "Policy") to insure the life of John Capotorto, III, Plaintiff's now-deceased spouse. (Compl. at ¶ 6; ECF No. 18 (Declaration of Scott Hicks in Support of Defendant's Motion to Dismiss Plaintiff's Complaint), Exh. A, the "Policy"). The Policy was issued by the California Association of Golf and Private Clubs. (Compl. at ¶¶ 3, 6). The Policy includes the following exclusionary provision (hereinafter, the "Exclusionary Provision"):

> "EXCLUSIONS
>
> No benefit will be paid by this coverage for a death or loss that results from, or that is caused directly, wholly or partly by:
> …
> 9. ***Being under the influence of any drug or substance***. Conviction is not necessary for determination of being under the influence. This does not apply if you are using a drug or substance prescribed for you by a *physician.*
>
> 'Drug or substance' means any drug, narcotic, hallucinogen, barbiturate, amphetamine, gas or fumes, poison or any other controlled substance as defined in Title II of the Comprehensive Drug Abuse Prevention and Control Act of 1970, as such act now exists, or is amended from time to time.

(Policy at 14–15) (emphasis added).

Plaintiff was the sole beneficiary of the Policy. (Compl. at ¶ 6). The Insured died on August 29, 2021, and the cause of death was "Acute Intoxication Due to the Combined Effects of Heroin, Fentanyl, P-Fluorofentanyl and Xylazine." (*Id.* at ¶ 7; *see also* Compl., Exh. A (Death Certificate)). After the Insured's death, Plaintiff timely filed a claim under the Policy. (Compl. at ¶ 8). In a letter dated February 22, 2022, Defendant denied Plaintiff's claim, citing the Exclusionary Provision above. (*Id.* at ¶ 9; *see also* ECF No. 15 (Decea Affirmation in Opposition to Motion to Dismiss), Exh. A). As a result, Plaintiff initiated this legal action, seeking to recover benefits allegedly owed under the Policy.

**II.    Procedural Background**

Plaintiff commenced the action against Defendant in State Court by filing a complaint in the Supreme Court of the State of New York, County of Westchester on April 19, 2022. (Compl.). On May 27, 2022, Defendant removed the action to the United States District Court of the Southern District of New York pursuant to 28 U.S.C. §§ 1332 and 1441 on the basis of federal question jurisdiction, indicating that the Policy is governed by The Employee Retirement Income Security Act of 1974 ("ERISA"). (*See* Notice of Removal at 1–3). Defendant now moves to dismiss the Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief may be granted on the theory that no benefit is owed to Plaintiff because the Policy explicitly excludes payment of benefits for drug-related deaths. (*See* ECF No. 14, ("Def.'s Mem.") at 4–7).

## LEGAL STANDARDS

### I. Subject Matter Jurisdiction

Although neither party contests that subject matter jurisdiction exists, subject matter jurisdiction is a threshold issue, and a court "may examine subject matter jurisdiction, *sua sponte,* at any stage of the proceeding." *F.D.I.C. v. Four Star Holding Co.*, 178 F.3d 97, 100 n.2 (2d Cir. 1999). In fact, when a jurisdictional requirement "goes to subject-matter jurisdiction, courts are obligated to consider *sua sponte* issues that the parties . . . have not presented." *Gonzalez v. Thaler*, 565 U.S. 134, 141 (2012). Because subject matter jurisdiction is at the core of the federal court's authority to adjudicate a dispute, it "can never be waived or forfeited." *Id.*

The subject matter jurisdiction of the federal district courts is limited and is set forth generally in 28 U.S.C. §§ 1331 and 1332. Under these statutes, federal jurisdiction is available only when a federal question is presented or when the plaintiff and the defendant are citizens of different states and the amount in controversy exceeds the sum or value of $ 75,000. Subject matter

jurisdiction also exists where "Congress has so completely preempted an area of the law that any civil complaint is necessarily federal in character." *Williams Ins. Trust v. Travelers Ins. Co.*, 50 F.3d 144, 147 (2d Cir. 1995). In that circumstance, a complaint facially grounded in state law will nevertheless be determined to arise under federal law and may be removed. *Id.*

One such area of state law that is preempted is ERISA. ERISA allows a beneficiary to "recover benefits due to him under the terms of [a] plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan," 29 U.S.C. § 1332(a)(1)(B), thus preempting state law and conferring federal jurisdiction. *See Metro. Life Ins. Co. v. Taylor*, 481 U.S. 58, 62–64 (1987) (holding that ERISA preempts state common law contract claims that allege wrongful denial of benefits); *Harrison v. Metro. Life Ins. Co.*, 417 F.Supp.2d 424, 432 (S.D.N.Y. 2006) (citing *Lupo v. Human Affairs, Int'l, Inc.*, 28 F.3d 269, 272 (2d Cir. 1994) ("ERISA preempts state law causes of action")). Section 514 of ERISA provides that the statute's provisions 'supersede any and all State law insofar as they may now or hereafter relate to any employee benefit plan." 29 U.S.C. § 1144(a); *Harrison*, 417 F.Supp.2d at 432 (noting that ERISA's civil enforcement remedies are intended to be exclusive remedies for enforcing rights in ERISA-governed plans).

Life insurance policies are governed by ERISA where there is a dispute to enforce rights under the plan. *See* 29 U.S.C. § 1132(a)(1)(B); *Metro. Life Ins. Co. v. Little,* No. 13-cv-1059 (BMC), 2013 WL 4495684, at *1 (E.D.N.Y. Aug. 17, 2013) (citing *Metro. Life Ins. Co. v. Bigelow*, 283 F.3d 436, 439-40 (2d Cir. 2002) ("[T]he issuances of [a] life insurance policy to fund the benefits under an ERISA plan confers federal question jurisdiction as to the appropriate distribution of its proceeds.")); *see also McArthur v. Carmichael,* No. 97 Civ. 8102 (LLS), 1998 WL 146233, at *4 (S.D.N.Y Mar. 25, 1998) (denying motion to remand where plaintiff "seeks to

recover benefits allegedly owed to her under [a life insurance] plan and to enforce her rights under it, thereby bringing her claim within the ERISA enforcement scheme.").

## II. Motion to Dismiss Under Rule 12(b)(6)

On a motion to dismiss for "failure to state a claim upon which relief can be granted," Fed. R. Civ. P. 12(b)(6), dismissal is proper unless the complaint "contain[s] sufficient matter, accepted as true, to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *see also Hayden v. Paterson*, 594 F.3d 150, 160 (2d Cir. 2010). In considering a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), the Court construes the complaint liberally, "accepting all factual allegations in the complaint as true and drawing all reasonable inferences in the plaintiff's favor." *Chambers v. Time Warner, Inc.,* 282 F.3d 147, 152 (2d Cir. 2002). This "plausibility standard" is guided by two working principles. *Iqbal*, 556 U.S. at 678. First, although the Court must accept all of a complaint's allegations as true, this tenet does not apply to legal conclusions. *Twombly*, 550 U.S. at 555. Therefore, recitals of the elements of a cause of action, supported only by conclusory statements, are not sufficient. *Id.* Second, in order to survive a motion to dismiss, a complaint must state a "plausible claim for relief." *Twombly,* 550 U.S. at 556.

On a motion to dismiss, the Court may consider the documents that are "asserted within the four corners of the complaint, the documents attached to the complaint as exhibits, and any documents incorporated in the complaint by reference." *McCarthy v. Dun & Bradstreet Corp.,* 482 F.3d 184, 191 (2d Cir. 2007). One way a document may be deemed incorporated by reference is where the complaint "refers to" the document. *EQT Infrastructure Ltd. v. Smith,* 861 F.Supp.2d 220, 224 n.2 (S.D.N.Y. 2012). "Specifically in the ERISA context, '[b]ecause the Plan is directly referenced in the complaint and is the basis of this action, the Court may consider the Plan in

deciding the motion to dismiss.'" *Faber v. Metro. Life Ins. Co.,* No. 08–cv-10588, 2009 WL 3415369, at *1 n. 1 (S.D.N.Y. Oct. 23, 2009) (quoting *Steger v. Delta Airlines, Inc.,* 382 F.Supp.2d 382, 385 (E.D.N.Y. 2005)).

### III. Contract Interpretation

"Insurance policies are contracts and are therefore interpreted according to the rules of contract interpretation." *Clark v. Travco Ins. Co.*, No. 13-CV-5140 (NSR), 2015 WL 4729978, at *1 (S.D.N.Y. Aug. 7, 2015) (citing *Frazer Exton Dev. L.P. v. Kemper Env. Ltd.*, 153 F. App'x 31, 32 (2d Cir. 2005)). "The words and phrases in a contract should be given their plain meaning, and the contract should be construed so as to give full meaning and effect to all of its provisions." *Matter of Pooling and Serv. Agreements.*, No. 17-CV-1998 (KPF), 2018 WL 1229702, at *6 (S.D.N.Y. Mar. 9, 2018). Thus, a threshold issue for the court is "whether the contract is ambiguous." *Great Minds v. Fedex Off. & Print Servs. Inc.*, 886 F.3d 91, 94 (2d Cir. 2018). "At the motion to dismiss stage, a district court may dismiss a breach of contract claim only if the terms of the contract are unambiguous." *Orchard Hill Master Fund Ltd. v. SBA Commc'ns Corp.*, 830 F.3d 152, 156 (2d Cir. 2016).

Ambiguity exists where a contract's "terms could suggest more than one meaning when viewed objectively and by a reasonably intelligent person who has examined the context of the entire integrated agreement and who is cognizant of the customs, practices, usages and terminology as generally understood in the particular trade or business." *Id.* On the other hand, there is no ambiguity where the language of an insurance policy has "definite and precise meaning, unattended by danger of misconception in the purport of the policy itself, and concerning which there is no reasonable basis for a difference of opinion." *Breed v. Ins. Co. of N. Am.*, 46 N.Y.2d 351, 355 (1978).

**DISCUSSION**

**I.    This Court has Subject Matter Jurisdiction under ERISA**

None of the parties contest subject matter jurisdiction under ERISA, or that the Policy is an ERISA plan under 29 U.S.C. § 1002(1). (*See generally* Notice of Removal, *see also* Compl.). Because Plaintiff brings this case to dispute her benefits under her deceased husband's life insurance policy, the Court finds that it properly has jurisdiction under ERISA. *See supra*; *see also McArthur*, 1998 WL 146233, at *2–3 (citing *Krishna v. Colgate Palmolive Co.*, 7 F.3d 11, 13–14 (2d Cir. 1993)).

**II.   The Policy is Unambiguous and Excludes the Insured's Cause of Death**

The parties' dispute can be distilled to a single question: does the Insured's death fall within the Exclusionary Provision? The Policy provides in relevant part: "No benefit will be paid by this coverage for a death or loss that results from, or that is caused directly, wholly or partly by: … [b]eing under the influence of any drug or substance." (Policy at 14).

Following the conventions of contract interpretation, "where an insurer wishes to exclude certain coverage from its policy obligations, 'it must do so in clear and unmistakable language. Any such exclusions or exceptions from policy coverage must be specific and clear in order to be enforced." *Spindler v. Great N. Ins. Co.*, CV 13-5237 (JS)(GRB), 2016 WL 921646, at *5 (E.D.N.Y. Feb. 2, 2016) (citing *Ins. Co. of Greater New York v. Clermont Armory, LLC*, 84 A.D.3d 1168, 1170 (N.Y. App. Div. 2011)); *see also Pioneer Tower Owners Ass'n v. State Farm Fire & Cas. Co.*, 12 N.Y.3d 302, 307 (2009). Additionally, "unambiguous language in an ERISA plan must be interpreted and enforced in accordance with its plain meaning." *Verdier v. Thalle Constr. Co.*, No. 14-cv-4436 (NSR), 2017 WL 78512, at *5 (S.D.N.Y. Jan. 5, 2017) (quoting *Aramony v. United Way Replacement Benefit Plan*, 191 F.3d 140, 149 (2d Cir. 1999)); *Matter of Pooling and*

*Serv. Agreements*, 2018 WL 1229702, at *6 ("The words and phrases in a contract should be given their plain meaning.").

The Insured's death certificate lists the cause of death as "Acute Intoxication Due to the Combined Effects of Heroin, Fentanyl, P-Fluorofentanyl and Xylazine." (Compl., Exh. A). Both parties characterize the Insured's death as a "drug overdose", (*See* Def.'s Mem. at 7–8; see *also* ECF No. 16 ("Opposition") at 1–2). For the reasons stated below, it is clear, by the plain and unambiguous language of the Policy, that the circumstance of the Insured's death does indeed fall within the Exclusionary Provision, and therefore Plaintiff cannot prevail on her claim.

The plain language of the Exclusionary Provision excludes coverage for deaths "caused directly, wholly or partly by . . . [b]eing under the influence of any drug or substance." (Policy at 14.). The phrase "under the influence of" is defined by Merriam-Webster Dictionary as simply "being affected by." *Under the Influence of*, Merriam-Webster Dictionary, https://www.merriam-webster.com/dictionary/under%20the%20influence%20of (last visited July 26, 2023). Therefore, a natural reading of the Exclusionary Provision indicates that it applies to any death caused by an incident which the Insured was affected by drugs.

The death of the Insured here is such an incident. The Insured's death certificate notes the cause of death as "Acute Intoxication" of the "combined *effects*" of the three listed substances. (Compl., Exh. A) (emphasis added). "Acute Intoxication is a pathological state of the organism caused by the action of a substance that is toxic by nature or dosage." Andrea Piccioni et al., *Risk Management in First Aid for Acute Drug Intoxication*, PubMed (Oct. 30, 2020), https://www.ncbi.nlm.nih.gov/pmc/articles/PMC7663746/. Deaths caused by *acute* toxicity are sudden deaths caused as a result of drug intoxication (as opposed to being caused by a chronic condition or behavior). *See A Reference Guide for Completing the Death Certificate for Drug*

*Toxicity Deaths*, CDC: National Vital Statistics System Report No. 2, at 1, 4, 7 (May 2019), https://www.cdc.gov/nchs/data/nvss/vsrg/vsrg02-508.pdf. Taking into consideration these definitions, it is clear that a plain reading of the Exclusionary Provision, which excludes deaths caused directly, wholly, or partly by "[b]eing under the influence of any drug or substance," encompasses deaths by acute intoxication. (Policy at 14).

For purposes of exclusion, the Policy defines "[d]rug or substance" as "any drug, narcotic, hallucinogen, barbiturate, amphetamine, gas or fumes, poison or any other controlled substance as defined in Title II of the Comprehensive Drug Abuse Prevention and Control Act of 1970, as such act now exists, or is amended from time to time." (Policy at 14–15). Title II of the Comprehensive Drug Abuse Prevention and Control Act contains five schedules of controlled substances, which includes heroin, fentanyl, and their derivatives. *See* 21 U.S.C. § 812. Thus, the circumstances of the Insured's death fall squarely within this Exclusion Provision, and Plaintiff's claim for benefits must be dismissed.

Plaintiff argues that the Exclusionary Provision should be read to apply only to deaths resulting from accidents such as motor vehicle or ski accidents that occur while a person is under the influence of drugs or a substance. (*See* Opposition at 3–4, 7–8). Plaintiff also argues that because the word "overdose" is not explicitly written into the Exclusionary Provision, then the Insured's cause of death is not unambiguously barred under the terms of the Policy. (*See* Opposition at 6–7). Plaintiff asserts that because there could be more than one reasonable interpretation of a policy term, the Court must adopt the interpretation most favorable to the insured party. (*See id*. at 6) (citing *U.S. Fid. & Guar. Co. v. Annunziata*, 67 N.Y.2d 229, 232, (1986) ("[A]mbiguities, if any, are to be resolved in the insured's favor and against the insurer.")).

However, the Court cannot find either that Plaintiff's proffered construction is reasonable or that the Exclusionary Provision is ambiguous.[1]

First, Plaintiff's reading of the Exclusionary Provision is overly narrow. The language and plain meaning of the Exclusionary Provision do not support Plaintiff's reading that the provision solely covers deaths resulting from accidents like motor vehicle or ski accidents that occur while being under the influence of drugs or substances. The language of the Exclusionary Provision covers deaths that are *partly* caused by being under the influence of drugs, and the term "partly" leads the Court to find that the exclusionary language is broad. *See e.g. In re New York City Asbestos Litigation*, 41 A.D.3d 299, 301–302 (N.Y. App. Div. 2007) (reasoning that a contract provision seeking to indemnify defendant company against liability caused "*wholly or in part*, by any act or omission" was "broad enough" to permit indemnification) (emphasis added). Plaintiff's interpretation of the Exclusionary Provision reads out other injuries that may arise as a consequence of being under the influence of drugs or substances, which is contrary to the broad language of the provision.

Second, Plaintiff's argument that recovery of benefits for the Insured's death is not barred because the term "overdose" is not specifically and explicitly stated in the Exclusionary Provision is bellied by the broad language of the Exclusionary Provision.[2] Because the language of the

---

[1] The Court also notes that another provision bars recovery for death or loss arising out of "[b]eing intoxicated … '[i]ntoxicated' means being legally intoxicated as determined by the laws of the jurisdiction where the accident occurred." (Policy at 15). Neither party references this provision in their papers, presumably because it was not the basis of Defendant's denying Plaintiff's claim for the death benefit. (*See* ECF No. 15 (Decea Affirmation in Opposition to Motion to Dismiss), Exh. A).

[2] The parties both characterize the Insured's death an overdose, even though the Death Certificate nor the Complaint use that term. (*See generally*, Compl. and Compl. Exh. A). The term "overdose" is colloquial and does not appear to have a precise medical or technical definition, but it is commonly considered to mean the over consumption of a drug or substance, regardless of the reason for taking the drug, or the type of drug. *See Opioid Overdose*, Substance Abuse and Mental Health Services Administration (SAMHSA), https://www.samhsa.gov/medications-substance-use-disorders/medications-counseling-related-conditions/opioid-overdose (last visited July 26, 2023). In fact, the U.S. Department of Health and Human Services reporting guidance on deaths related to drug toxicity advises "avoid [in] using vague phrases such as 'drug overdose'… while [this]

contract is broad, that the Exclusionary Provision does not explicitly state a specific circumstance or event does not mean it is not covered by its terms. *See, e.g.*, *Valley Disposal v. Central Vermont Solid Waste Mgmt Dist.*, 71 F.3d 1053, 1058 (2d Cir. 1995) (in Section 1983 context, holding that "a party may express its intent to waive attorneys' fees by employing broad release language [in a settlement agreement], regardless of whether that release explicitly mentions attorneys' fees"); *Innophos, Inc. v. Rhodia, S.A.*, 10 N.Y.3d 25, 29–30 (2008) (finding that a contract's definition of taxes was "sufficiently broad" to encompass water charges, which were not explicitly included in the clause). As explained above, a plain reading of the Exclusionary Provision covers the Insured's death on its own terms. Thus, the Court concludes that the Exclusionary Provision unambiguously applies here.

### III.    *Miller* is distinguishable

Throughout the Complaint, Plaintiff discusses *Miller v. Continental Ins. Co.*, a case where the Court found that death caused by a drug overdose does not fall under the exclusion provision of a life insurance policy and argues that the case is analogous. 40 N.Y.2d 675 (1976); (*see* Compl. at ¶¶ 10–14). In *Miller*, the insured died of a heroin overdose, and the defendant insurance company denied the beneficiary's claim for benefits because it erroneously deemed that the cause of the insured's death fell under the exclusionary provision under the policy, which excluded deaths resulting from "intentionally self-inflicted injuries, suicide or any attempt thereat." *Miller*, 40 N.Y.2d at 676.

*Miller* is similar to the instant case to the extent that the key question centered on whether a drug overdose fell under a policy's exclusionary provisions. However, that is where the

---

phrase [] identif[ies] the death as having some aspect of drug involvement, the detailed information on the specific drug(s) is still needed." *A Reference Guide for Completing the Death Certificate for Drug Toxicity Deaths*, CDC: National Vital Statistics System Report No. 2, at 2 (May 2019) https://www.cdc.gov/nchs/data/nvss/vsrg/vsrg02-508.pdf.

11

similarities between *Miller* and the instant action end. The relevant policy language in *Miller* is different than the one presented in this case, and therefore, the case is distinguishable.

The New York Court of Appeals in *Miller* assessed whether the insured's death caused by his intentional use of heroin could be interpreted to mean that his death was an "intentionally self-inflicted injur[y]" or "suicide" under the exclusionary provision, or if it should be considered an "accident" and therefore eligible for benefits coverage. *Id.* The Court determined that the lower courts did not err in finding that the insured's death was accidental, given that there was no showing that the insured "intended [his usage of heroin] to have fatal consequences . . ." *Id*. at 677.

Plaintiff cites to *Miller* in support of its argument that if the Defendant intended to exclude death caused by drug overdose from its coverage, it should have explicitly stated so in the Policy. (*See* Opposition at 5–6). It is true that the Court in *Miller* stated that "if the defendant intended to exclude death caused by an overdose of narcotics from its coverage . . . there was nothing to prevent it from inserting in its contract of insurance plain and unmistakable language that said so." *Miller*, 40 N.Y.2d at 679. However, as the parties recognize, nowhere in the *Miller* life insurance policy were there specific provisions related to drugs or narcotics. (*See* Def.'s Mem. at 7; Opposition at 4–5.) Here, Defendant's Policy plainly excludes deaths caused, even in any part, for being under the influence of drugs. (*See* Policy at 14).

## CONCLUSION

For the foregoing reasons, Defendant's 12(b)(6) motion to dismiss is GRANTED, and Plaintiff's claims are dismissed without prejudice.

The Court grants Plaintiff leave to amend her complaint. Should Plaintiff wish to file amended pleadings, she is directed to do so on or before September 5, 2023. Defendants are thereafter directed to file an answer or to seek leave to file a motion to dismiss, pursuant to the

Court's Individual Rule 3(A)(ii), on or before September 26, 2023.  Should Plaintiff fail to file a timely amended complaint, the action will be deemed to be dismissed with prejudice.

The Clerk of Court is respectfully directed to terminate the motion at ECF No 13.

Dated: August 4, 2023  
       White Plains, NY

SO ORDERED:

_____  
HON. NELSON S. ROMAN  
UNITED STATES DISTRICT JUDGE